No. 31.—AARON FORMBY, plaintiff in error, *vs.* WM. B. PRYOR, for the use, &c., defendant in error.

[1.] An agreement to procure a pardon from the Governor, for a convict in the Penitentiary, by the proper use of all legitimate means, is neither immoral nor against the public policy.

[2.] If an instruction is given to the Jury, which leaves them to draw an incorrect inference, from facts material to the issue, the verdict will be set aside.

Assumpsit, &c., in Troup Superior Court. Tried before Judge IRWIN, November Term, 1853.

This was an action by Wm. B. Pryor against Aaron Formby, for professional services, in procuring the pardon of George

W. Formby, the son of defendant, who was imprisoned in the penitentiary. Upon the trial, it was proven by plaintiff below, that defendant agreed to give him $500 for his services. Defendant below proved, that Pryor said he intended to charge nothing.

The Court charged the Jury, that "if they believed that a contract had been proven between the parties—that the declarations of Pryor to third persons, (after the contract was made between himself and Formby,) without consideration, saying that he would not charge defendant, was a *nudum pactum*".

To this charge, defendant below excepted, and assigned error.

Defendant farther excepted, and assigns as error, the failure of the Court, upon its own motion, and without request, to charge the Jury, that the contract sought to be inforced was void, being contrary to public policy, and immoral in its tendency.

WALKER, for plaintiff in error.

STEPHENS & BIGHAM, for defendant in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

This was an action of assumpsit, brought by Wm. B. Pryor, as an attorney at law, to recover five hundred dollars of Aaron Formby, the defendant, as a fee for services to be rendered by the plaintiff, for getting George W. Formby, the son of the defendant, out of the penitentiary, where he was imprisoned for the offence of larceny.

On the trial, the plaintiff submitted his evidence, in support of his declaration; and I regret exceedingly, that it becomes indispensably necessary to recapitulate the whole of it, as two of the three exceptions, grow out of the nature and extent of the proof. William Allman swore, that he was applied to by the plaintiff, at the house of the defendant, for an affidavit, to present to the Governor of Georgia, upon an application for

·the pardon of George W. Formby; that defendant told witness, that he had employed Col. Pryor to hunt up evidence, for ·the purpose of procuring the liberation of his son; that he did not recollect the precise sum which was stipulated to be paid; ·but he saw plaintiff buy a dog of defendant, for five dollars, which he promised to deduct from his fee in the case.    Catharine Johnson testified, that she heard Aaron Formby, the defendant, say that he was to give plaintiff five hundred dollars, to get his son out of the penitentiary.    It was while he was in the State prison, and a short time before he was discharged.— Ex-Governor Crawford, examined by commission, stated that he had no distinct recollection of an application to him, while Governor, for the pardon of young Formby; but that he did remember, that while he held that office, that he had a convertion with the plaintiff, relative to the pardon of a person convicted of a penitentiary offence, committed in one of the border counties—say Troup, Heard or Carroll; and who was, at the date thereof, imprisoned in the penitentiary.    He also recollects, that the pardon was urged by plaintiff, on the ground of the mental imbecility, mainly, of the prisoner.    He did not distinctly remember who made the application, nor who presented the petition and affidavits; nor how often the application was repeated; nor in what year it occurred; but thinks it was during his second term in office—say in 1846 or 1847.

Plaintiff next introduced the pardon of Formby, by George W. Towns, the successor of Governor Crawford, bearing date 20th day of December, 1847, which recites on its face, that he was discharged on account of his orderly and industrious conduct, as well as by reason of the earnest representations in his behalf, by respectable citizens, that the circumstances in which he was placed, were calculated to mislead him; and that the general opinion was, that he was so mislead, and acted from no corrupt motive.

Jacob Johnson and George W. Johnson both testified, that they heard defendant say, in May or June, 1847, that he was to give plaintiff five hundred dollars, to get his son out of the penitentiary.

Wm. M. Latimer testified, that Col. Pryor presented a petition to the Governor, for him to sign, for the pardon of Formby, in 1846, which he refused to do. Seaborn J. Thompson swore, that plaintiff brought George W. Formby to his tavern sometime in 1847. Judge Hill testified, that Col. Pryor accompanied him to Milledgeville, during the sitting of the Legislature, in 1847. And here plaintiff closed his case.

The defendant then offered rebutting proof. Mary Dobson swore, that she heard plaintiff say, that he intended to petition for the pardon of Formby, for that he believed that he was unjustly convicted; that the old man had paid him once, to work for him; and that when he put his hand once to the plow, he never looked back; that he meant to have Washington out of the penitentiary, and that it should never cost his father another cent; and that he would rather give the old man something than rob him in his old age, and destroy his grey hairs. She heard this about the middle of November, 1846. She farther testified, that Col. Pryor said, that he was doing what he was then doing, for the good feeling he had for the old man Formby and the family; and that he had been paid by the old man. She did not know in what the payment consisted of. Witness is the daughter of defendant.

William G. Ray testified, that at the house of the defendant, early in the year 1847, and he thinks in the month of January, of that year, he being sent for to fill out certificates or affidavits, to be laid before the Governor, and while Col. Pryor was harnessing his horse, he heard him say, that he intended to have George W. Formby pardoned; that Fed Chandler, Thomas Tuggle and others, were as much or more guilty than Formby; that they only wished to get Formby out of the way, that they might have free access to his wife; that it was a shame for any person to be served as Formby was, on his trial; that Giles Tompkins was drunk at the time, and made no effort in his behalf; and the reason that he (Pryor) made no stronger effort in his behalf was, because he saw the condition that Tompkins was in, and that the whole Court was pretty much in the same condition; that he thought, at the time of the

trial, to let Formby suffer a little, by being convicted and incarcerated for a short time, would make him more cautious in future ; that he knew, at the time, that if he was found guilty, that it would be an easy matter to have him released ; and that he was doing what he then was, without the promise or expectation of any additional fee or reward ; and that he considered that the defendant had paid a sufficient fee already, for all that he had done or could do, to procure the pardon of his son ; that he should never pay him any more for his services ; and that if he were to charge anything more, he should expect to be haunted by the grey hairs of the defendant, to the latest day of his life ; that he felt more like giving him something, than taking anything from him.

Asa F. Formby testified, that he heard plaintiff say, that he did not intend to charge anything for his services in the matter of the pardon ; and the reason he assigned was, that he had been once paid for his services. This was on the 16th day of November, 1846. Francis M. Formby testified, that about the 1st of December, 1847, plaintiff was at the house of defendant ; and said he came to get money, to bear his expenses to Milledgeville, to get George W. Formby out of the penitentiary. He said that he had been paid a good fee, for defending Wash, who had not had justice done him. Aaron Formby advanced to Col. Pryor $20 or $25, to defray the expenses of his trip.

Noah Lee swore, that in the Fall of 1847, he had a conversation with plaintiff, who stated that he was going to get Wash Formby out of the penitentiary ; that defendant had already paid him a good fee ; and that he would not charge anything more, for what he was going do. This was just before plaintiff went to Milledgeville.

The defendant having closed his testimony, the Court charged the Jury, amongst other things, "that if they believed that a contract had been proven between the parties, that the declarations of Pryor, to third persons, after the contract was made between himself and Formby, without consideration, saying that he would not charge defendant, was a *nudum pactum*".

The Jury returned a verdict for the plaintiff; and the counsel of the defendant moved for a new trial, on three grounds :

1st. Because the verdict was contrary to evidence, and without evidence.

2d. On account of the misdirection of the Court, in its charge to the Jury ; and,

3d. Because the Court did not, of its own motion, and without being requested so to do, instruct the Jury, that the agreement sought to be inforced, was against public policy, immoral and void.

As to the first ground, it is the opinion of this Court, that, so far from the verdict being *without* evidence, there was abundant proof to sustain it. The agreement was fully established, as well as the services rendered, in pursuance of the plaintiff's undertaking.

[.1] Was the contract such a one as a Court would not inforce ? So far from it, we see no objection to the course pursued by counsel in this case, viz : to appear before the Governor, and convince him, either that the prisoner was the dupe of a foul conspiracy; or that, by reason of his mental imbecility, he was mislead, to commit the act; and that he was influenced by no felonious intent. And that, consequently, he was a fit subject for the interposition of Executive clemency.

[2.] Was the charge right, upon the proof? We have only the extract, contained in the motion for a new trial. And standing alone, as it does, it occurs to the Court, that the presiding Judge misapprehended the object for which the testimony of the defendant was introduced.

The defendant, amongst other things, pleaded, that he never did employ the plaintiff, professionally, to procure the pardon of his son. And the evidence was offered to support this plea. To establish, by the declarations of the plaintiff, himself, that he, the defendant, had made no agreement to pay him ; and that he, plaintiff, did not charge him anything, or expect to recover anything from him. Instead of that, the Court treats it as an attempt to set up a new and subsequent contract, founded on no valid consideration, to annul a pre-existing debt.

Seeing that injustice may have been done the defendant, in this respect, we feel constrained to remand the cause for a new trial.

Judgment reversed.