ENOCH F. COLLINS *et al.*, plaintiffs in error *vs.* A. P. COLLINS *et al.*, executors, defendants in error.

1. When in 1863, A sold to B two negro slaves for $5,000 00, payable in pork at $1 00 per pound and in cotton at fifty cents per pound, but no note was taken, and soon after $2,000 00 was paid in pork according to the contract, and afterwards, A having died, his executors, after the 1st June, 1865, adjusted the debt with B, fixing the amount due at $1,700 00, part of which was then paid, and B's note, with C as security, taken for the balance:

*Held,* That this was not a mere renewal of the old debt, so as to bring it within the Relief Acts of 1868 or 1870. But as there was, in fact, no new consideration, and the party introduced was only a security, the

Collins *et al. vs.* Collins *et al.*

note was still for slaves, and it was error in the Court to charge the jury that there had been such a novation as to purge the debt of its slave consideration.

2. Where there was evidence on one side that the consideration of a note was the price of a slave, and on the other, that it was given in settlement of a dispute about the title to twelve bags of cotton, it was the duty of the Court to charge the jury as to the law arising under the proof, under the evidence of both sides.

Slave debts. Novation. Relief. Before Judge COLE. Bibb Superior Court. October Term, 1870.

On the 24th of August, 1866, Enoch F. Collins, and Stephen Collins as his surety, delivered their promissory note for $500 00 of that date, and due twelve months thereafter, payable to A. P. & O. C. Collins, executors, with interest from date. A. P. & O. C., as executors of Charles Collins, sued Enoch F. and Stephen on said note. They pleaded that the consideration of said note was slaves sold by said Charles to said Enoch F., in November, 1863; that this was a renewal of the old obligation, and that Enoch F. had lost $5,000 00 by emancipation of his slaves by the war. When the cause was called, defendants objected to the trial of the cause because no affidavit of taxes being paid was filed as required by the Relief Act of 1870. The Court, after hearing their version of the facts, ordered the trial to proceed. The plaintiffs read in evidence the note and closed. Enoch F. and Stephen testified, that in the fall of 1863, Enoch F. bought of Charles two slaves at $5,000 00, Confederate valuation, to be paid for in pork at $1 00 per pound, as much as he chose, and partly in cotton at fifty cents per pound. He paid $1,900 00 or $2,000 00 in pork that winter; never paid the cotton; no note or other writing was made. But, after Charles' death and since the war, Enoch F. and said executors estimated the value of said debt in United States currency at $1,700 00. Enoch F. paid them $700 00 and gave them two notes for $500 00, one of which was paid, and the other is the one sued on. No cotton was

delivered to Charles, nor did Enoch F. have any cotton belonging to him, nor did he settle for any cotton, but renewed said old demand as aforesaid.

The executors claimed that Enoch F. had twelve bales of cotton belonging to Charles, and sued out a possessory warrant for them. This was decided against the executors, and then they brought trover for said twelve bales of cotton. Enoch F. afterwards, being about to move to Louisiana and fearing annoyance, got Stephen to arrange the settlement as aforesaid. Enoch testified that one of the said slaves died during the war; the other was emancipated. Enoch had but ten bales of cotton during the war; he lost $8,000 00 by the emancipation of slaves. Stephen testified also, that he never received any cotton from Enoch F. for Charles; that, some time during the war, he saw Enoch F. weigh ten bales of cotton, and somebody put down their weights on paper; what became of the paper he did not know. He had no connection with this debt till he signed as security as aforesaid. A. P. Collins testified that he found among Charles' papers a slip of paper containing the weight of twelve bales of cotton, in pencil, but who made the figures he did not know. It had nothing else on it. From that circumstance, and what he knew about the cotton, O. P. Collins called on Enoch F. for it, and he consented to deliver it. When he subsequently refused to deliver it, they tried a possessory warrant and failed; then brought trover and settled that trover suit by $700 00 in cash and two notes at $500 00 each, as stated. This settlement was for the cotton and not for any balance due for slaves. When the cotton was demanded it was worth fifty cents per pound. This was supported by O. P.'s testimony, substantially the same. W. Poe testified that he brought the trover action, supposing from what they told him he could recover.

Defendants asked the Court to charge the jury:

1. If Enoch F. became indebted to Charles in 1863 for

Collins *et al. vs.* Collins *et al.*

slaves, and if said note was given in renewal and not in novation of said debt, plaintiffs cannot recover.

2. The fact that the debt was due to Charles, and the renewal to his executor, does not make a novation by substitution of new parties under section 2682 of the Revised Code.

3. The fact that Stephen became security for Enoch F. in the renewal of the debt for negroes, does not make a novation by substitution of new parties under that section of the Code.

4. If the sale of negroes from Charles to Enoch F. was subsequent to Lincoln's proclamation emancipating slaves, the debt from Enoch F. to Charles was illegal and void and no renewal of the same can give it validity.

5. If this note is a renewal of a contract existing prior to June, 1865, the jury will consider defendant's plea of loss and the proof before them under that plea.

6. If the consideration of slaves is in the contract the fact that some other consideration is also in it does not entitle plaintiff to recover. If the slave consideration is in the note plaintiffs cannot recover.

The Court refused to give any of said charges except the second. He charged that the addition of Stephen, as security to the note, (he having been before in no way interested in, or liable on, the previous contract,) was a novation by substitution of new parties under section 2682 of the Revised Code. The jury found for plaintiffs for $500 00 and interest. Defendants say the refusal to postpone the cause and the refusal to charge as requested, and the charge as given are errors.

B. HILL; E. F. BEST for plaintiffs in error. This case is covered by Relief Act of 1870: Novation, R. Code, sec. 2682; 40 Ga. R., 487. Lincoln's proclamation under Act of Congress, 1863: 10 Wallace R., 571; Shortrop *vs.* Macon Circ. C. N. C., N. C. If part for slaves, void: Dudley's R., 161; 1 Kelly, 410; 1 Met., 21; 19 Barb., 291; 4 Allen, (Mass.,) 55.

WHITTLE &· GUSTIN for defendant's in error. It was right to try now : Lyon *vs.* Williams, Mar., 1871. Novation, 39 Ga. R., 531 ; 40th, 193, 423, 487 ; R. Code, secs. 2125, 2682. Accord and satisfaction : R. Code, secs, 2827 to 2831. Lincoln's proclamation did not free slaves; Constitution of 1865 did : 34 Ga. R., 483 ; 37th, 361 ; 13 Rich., S. C. R. Eq., 366 ; 40 Ala. R., 524 ; 4 Caldw. Tenn. R., 580 ; 41 Miss. R., 439. If error in charge, the verdict is right anyhow : 37 Ga. R., 94 ; 40th, 423 ; Whitehead *vs.* Arline, present term.

McCAY, Judge.

It would be going very far to say that, in any sense of the evidence, the note sued on was a *mere renewal* of the old one. If this was the mere consideration set up by the plaintiffs, to-wit : the settlement of the suit for the cotton, then it is clearly a debt contracted since June, 1865. But even if the note was only given in settlement of the contract for the purchase of the negroes, this was not a *renewal*. There was a new agreement in any event; there was a settlement of the *amount* to be paid ; an adjustment of the value of Confederate money ; a change of the specific articles agreed upon into their value in United States currency. This we do not think was a renewal but a new contract, having the old one as a basis and object, but entirely a different contract. We do not think, therefore, that this contract comes within the Act of October, 1870.

2. But, if the defendant's account of the consideration of the note is the true one, we think the *consideration* of this note is slaves, and that the Court erred in not presenting to the jury this view of it.

If the consideration was the settlement of the value of the cotton, as a matter of course the slaves was not the consideration. But, if this note is an adjustment, by the parties, of the amount still due for the negroes, we do not see

how to escape from the conclusion that the consideration was the negroes.

To make out a case of novation, it is not enough that a new party, who is only a security, has been introduced. Strictly, under the statute, (Code, section 2682) to make a case of novation, the obligation must be due to a new party. At any rate, the old contract must be at an end. As this case presents itself, the payee is the same; the executors stand in the place of the testator, and the old debt is still of force—that is, the old debt as finally settled. The note is only the evidence of it. Nobody has been discharged; the only change of parties has been to add the security, who is a mere gratuitous party, not interested in the consideration.

We express our opinion on the facts. We simply mean to say that, if the defendant's account of the giving of the note be the true one, the consideration of the note is slaves, and they were entitled to have the law presented to the jury in the aspect of the case as presented by the evidence introduced for the defense.

Judgment reversed.