Seabrook *et al.* *vs.* Brady.

---

EDWARD W. SEABROOK, administrator, *et al.*, plaintiffs in error, *vs.* WRIGHT BRADY, administrator *de bonis non*, defendant in error.

(McCAY, Judge, having been of counsel, did not preside in this case.)

(WARNER, Chief Justice.)—1. Where a party holds land subject to a charge, under a former decision of this Court, and dies, the purchaser of the same from his heirs, unadministered, stands in no better condition, as to said incumbrance, than did the heirs. (R.)

Seabrook *et al. vs.* Brady.

2. Where an administrator conveys land which belonged to his intestate, claiming it as his own, his wife being the sole heir to said estate, and dies, the administrator *de bonis non* is entitled to recover the property for the purpose of administering the same, provided it shall be satisfactorily shown that it is necessary to do so, for the purpose of paying the debts of the intestate. (R.)

3. The 2d section of the Act of 1760 requires that there shall be two witnesses to an instrument executed by the wife, relinquishing her rights to land conveyed by her husband. (R.)

4. In a suit by an administrator *de bonis non* to recover property of the intestate, sold by his predecessor as his own, upon which there is a charge in favor of the latter's wife, which the defendants claim she has relinquished, the wife is a competent witness, notwithstanding the death of the husband. (R.)

(Trippe, Judge.)—1. Where, under a decision of this Court, a party has an obligation for the conveyance of land, which a Court of equity will enforce, arising out of the compromise of litigation in reference thereto, such claim would not prevail as against a *bona fide* purchaser from the owner directly, or under a judgment against him. (R.)

2. Where an administrator sues to recover lands from a purchaser holding under the heir-at-law, and seeks to avoid that sale on account of the necessity to pay debts, the debts and the creditors must be set forth in his bill, in order that the defendant may be put on notice as to the facts on which his property is sought to be condemned. (R.)

3. The defendants not having objected to the absence of a statement of the indebtedness of the intestate, and of the names of his creditors from the bill, and having allowed evidence to be submitted to the jury upon these points, could not have demanded a decree, as the defect in the pleadings might have been amended. (R.)

Equity. Executors and administrators. Distribution. Purchaser. Pleading. Husband and wife. Before Judge Strozier. Dougherty Superior Court. June Term, 1871.

This case, with the following statement, is fully reported in the opinions:

The bill charges that, some time in the year 1857, the lands in controversy were levied on under executions against William M. Brady, as administrator of Burton T. Dennard, and George O. Dawson, for the purpose of casting a cloud over the title and preventing persons from bidding, interposed a claim to said property, which he withdrew as soon as the issues

thus formed were reached in Court for trial. That on the day of sale, under the aforesaid levies, to-wit: the first Tuesday in August, 1857, said Dawson having agreed to pay off the executions, in consideration that the holders would not bid against him, had it announced publicly that the estate of Dennard had no title to said property; that it was in him; that he would allow the lands to sell, provided they did not bring more than the amount of his bid, to-wit: $20 00, which sum he was willing to pay, in order to obtain his peace as against other judgments that might be outstanding against Dennard's estate, but that if his bid was raised, he would immediately interpose a claim and stop the sale; that, under these circumstances, lands worth $12,000 00 or $15,000 00 were bid off by him at $20 00, and a sheriff's deed made accordingly, under which he also claims.

HINES & HOBBS; VASON & DAVIS; L. P. D. WARREN, for plaintiffs in error.

W. A. HAWKINS, for defendant.

WARNER, Chief Justice.

This was a bill filed by the complainant as administrator *de bonis non* of Burton T. Dennard, deceased, against the defendants, to set aside a sheriff's sale of certain described lands, on the alleged ground of fraud, and to recover the possession thereof, for the purpose of administering the same for the benefit of the creditors of his intestate. On the trial of the case, the jury, under the charge of the Court, found a verdict for the defendants. A motion was made for a new trial, on the several grounds set forth therein, which was granted by the Court, and the defendants excepted. It appears, from the evidence in the record, that in the year 1851, William Dennard, the father of the complainant's intestate, died, leaving a widow, Irene Dennard, and two children, Burton T., and Julia, the latter having intermarried with one William M. Brady. William Dennard, at the time of his death, left a

will by which he devised one-half of the land in controversy to his wife, Irene, together with other property; and the other half of the land, together with other property, to his son, Burton, giving to his daughter, Julia, only $50 00 as her full share of his estate. Julia and her husband, Brady, entered a caveat to the will, and during the pendency thereof in Court, a compromise was made between Brady and wife, and the other parties claiming under the will, whereby it was stipulated, that the caveat should be withdrawn, and in consideration thereof, that Irene, the widow of the testator, should receive the property devised and bequeathed to her by the will, and Burton T. agreed that out of the residue of the estate to which he was entitled under the will, that he would convey to William M. Brady, in trust for his wife, Julia, an amount equal to one-third of the whole estate of which William Dennard died seized and possessed, so soon as he should arrive at twenty-one years of age, and executed a bond, with security, in the sum of $15,000 00, for the faithful performance of the agreement. This conveyance, however, was never executed by Burton T., but after he became of age he and Brady purchased the widow's one half interest in the land and went into the possession of it, and remained there together until the death of Burton T., in 1853, when William M. Brady took out letters of administration on his estate, and held the possession of the property of Burton T., as his administrator, including three-fourths of the land in controversy, when he sold the same in October, 1856, to the defendant, Dawson. William M. Brady died in January, 1857. The deed from Brady to Dawson is dated 10th October, 1856, and was executed in Dougherty county.

A relinquishment of Mrs. Julia Brady's interest in the land conveyed to Dawson by her husband, whether as dower or otherwise, purports to have been executed by her on the 30th of December, 1856, in the county of Sumter, and witnessed by Ronaldson, clerk of the Superior Court. Since the death of Brady, his widow, Julia, has intermarried with Wilcher, and was examined as a witness on the trial, and stated that

Seabrook *et al. vs.* Brady.

she did not know the contents of the paper signed by her on the 30th of December, 1856, and was coerced to sign it by fear of her husband, William M. Brady. The fraud alleged in the sheriff's sale is, that the defendant, by his attorneys, made representations at the sale to prevent bidders, as charged and set forth in the bill and substantially admitted in the answer, whereby the defendant purchased the land for $20 00. Some of the questions involved in this case have been before this Court on two former occasions, between different parties, and have been *adjudicated:* See *Johnson et al. vs. Brady, administrator,* 24 *Georgia Reports,* 131; *Crawford et al. vs. Brady, administrator de bonis non,* 35 *Georgia Reports,* 184. This Court has decided that Mrs. Brady, now Mrs. Wilcher, (the claim of Jerry Cowles being out of the way,) has *the highest claim,* under the agreement of compromise, to be paid out of the property of her father's estate, which came into the hands of her deceased brother. In other words, that her claim to be paid the one-third of the whole estate of her deceased father, constituted a charge upon that estate in the hands of her deceased brother, of the highest character, and that it survived to her on the death of her husband. The property of William Dennard, which went into the hands of Burton T., under his will, is bound, under the decision of this Court, for the payment of that debt or charge, and the land in controversy being a part of that property, the heirs of Burton T. took it, subject to that debt or charge which the judgment of this Court declared was fastened upon it, and a purchaser of that property from the heirs of Burton T., *unadministered,* stand in no better condition than his heirs would have done. It is true, the title to land descends to and vests in the heirs of the decedent, subject to be divested for the payment of the debts of the deceased, by a due course of administration, according to law. Three-fourths of the land which the defendant purchased from Brady was the property of Burton T. Dennard, at the time of his death, and never has been administered, so far as the record shows, but, on the contrary, the defendant admits, in his answer, " that he believes it to be true

that said William M. Brady, as administrator, did not administer upon said plantation, and the reason why he did not do so was because the said William M. claimed the same as his own property." The complainant, as the administrator *de bonis non* of Burton T. Dennard, is entitled to recover his three-fourths interest in said land at the time of his death, for the purpose of administering the same, provided it shall be satisfactorily shown that it is necessary to do so for the payment of the debts of his intestate, including the debt due by him to Mrs. Wilcher, which this Court has decided is a *trust claim of the highest character*, and chargeable on his estate, under the agreement of compromise before mentioned. In order to defeat the payment of Mrs. Wilcher's claim out of the land or the proceeds thereof, on the ground that she relinquished all her interest in it, it must be shown that she did so freely and voluntarily, in the manner prescribed by law at the time the relinquishment was made. The 2d section of the Act of 1760 provides the manner in which *feme coverts* may relinquish their rights to land conveyed by their husbands : Cobb's Digest, 161. There was only one witness to the deed of Mrs. Brady relinquishing her title and interest in the land, whereas, the law required two.

In this suit between the administrator *de bonis non* of Dennard and the defendants, Mrs. Wilcher was a competent witness, and it was competent for her to testify as to acts and declarations of her husband at the time the deed was signed ; there was no confidential communications revealed which the law prohibits. The charge of the Court to the jury, in view of the real questions involved, was so confused and unsatisfactory that it was calculated to mislead the jury, and most probably did mislead them. In view of the facts contained in the record, we affirm the judgment of the Court below in granting the new trial.

Let the judgment of the Court below be affirmed.

TRIPPE, Judge, concurring.

The contract or agreement made at the time the caveat to the will of William Dennard was withdrawn, doubtless was in the language of this Court, in 35 *Georgia,* 190, "an *obligation for a conveyance* which a Court of equity will enforce." This is true, and it could have been enforced against Burton T. Dennard or against his representative. It may further be true, as remarked by Judge McDonald, in 24 *Georgia,* 135, that after the payment of a certain debt against the estate of William Dennard, "if a judgment should be obtained, Mrs. Brady, (now Wilcher,) has the highest claim under the agreement of compromise. That agreement was never executed, and she has a right to demand its execution before the property can be appropriated to the debts against her deceased brother." I shall not contest the truth of this last proposition. It was made in a case where there was a contest as to her priority over other creditors. But I cannot think that the Judge or the Court in either of these cases meant that Mrs. Wilcher had such a lien on, or legal or equitable title to, or interest in any portion of Burton T. Dennard's property by virtue of that contract, as to be good against a *bona fide* purchaser from Burton T., or under a judgment against him or his estate. It was an equity in her that was not good against legal rights or titles derived from or through him, unless the holders thereof were affected by notice. As to all such persons, and even as against a purchaser from her husband, William M. Brady, without notice, for he under the law as it then was, had the right to sell her interest as heir, if there were no debts, she was simply a creditor, a creditor it is true, with a certain priority, but with no such charge on the property or title to it as to prevent a *bona fide* sale by him or by the sheriff or by her husband, except if made by the husband before her debt was paid, she stood with the same right as all other creditors, the right to subject all the property of her debtor to a due administration and payment of debt.

I have said if there had been no debts against the estate of

Seabrook *et al. vs.* Brady.

Burton T. Dennard, William M. Brady's sale, without the joinder of his wife would have been good, except as to her right of dower, which is not in question here. He was the husband of Julia M. Brady, the sole heir of Burton T. Dennard, and a sale by him would have been the assertion of his marital rights to the property. After such a sale an administrator of Burton T. could not recover from the purchaser unless he shows on the trial "that it was necessary for him to have possession for the purpose of paying the debts:" Code, section 2450; and the condition being that there were no debts and no necessity "for making a proper distribution," he could not recover. If there be debts then it is clear the administrator could recover.

In this case the administrator charges that there are debts. He does not specify any in his bill, not even the claim of Mrs. Wilcher, and further shows he was aware of the purchase by the defendant from W. M. Brady, the husband. No point was made on this omission to set out the debts which "it was necessary to pay," nor the creditors, nor was any objection made on the trial to the evidence that Mrs. Wilcher was a creditor. There was no proof of any other debts. The defendant sought by his answer and proof to show that Mrs. Wilcher was not a creditor, who could have her debt enforced against the property bought by him from her husband, and also, at sheriff's sale; that she had joined her husband in the conveyance; that her debt should be credited, or paid with certain money alleged to be in the administrator's hands, received from defendant, and that, to allow a recovery for her benefit, would be to permit her to commit a fraud on him, etc. Thus the issue, the whole contest was made to turn on the question, whether Mrs. Wilcher could enforce her claim or debt on this land, and this too when she was not a party.

In my opinion, no decree, that she has no legal right to enforce her judgment, if she has a judgment, or should obtain one, against this property, or that the administrator cannot administer it for her payment, could bind her, unless she be a party to that decree; and therefore no attack on her right as

a creditor of Burton T. Dennard, ought to be allowed, until she be made a party. This the defendant could do by cross-bill, and then every question touching every equity of all the parties could be finally adjusted, the amounts that may be due creditors ascertained, and their priorities, and if this land be held liable, and is more than sufficient to pay the debts, a proper disposition of the surplus can be made, and, if equitable, paid over to defendant. For, under the view I have taken, as it can only be recovered from the defendant to pay debts, if there be a surplus, it should go to him. In a case so made, the question could be raised as to defendant's rights on account of the mortgage money paid to Irene Dennard, and the money paid by him to the administrator, on the purchase from W. M. Brady. Also, the further question presented in the record, as to the competency of Mrs. Wilcher, as a witness to impeach her contract or conveyance, when the other party is dead.

The question may be asked how can a defendant in such a case show that there is no creditor or that any particular person has no valid debt, not knowing who the creditors are or who that particular creditor is?

Where an administrator, under the provisions of section 2450 of the Code, which is but a statutory affirmance of a principle existing long before the Code, sues to recover lands from a purchaser holding under the heir-at-law and seeks to avoid that sale on account of the "necessity to pay debts," in my opinion it is not only "necessary for him to show on the trial that it is necessary to pay debts," but he should set forth the debts and the creditors in his bill in order that the defendant, the purchaser, may be put on notice as to the facts on which his property is sought to be condemned. If it can be taken from him for that purpose and no other, and is to be adjudged liable to pay a debt, he should have notice of what is thus attempted to be asserted against him. Any other rule would work manifest injustice, would disable heirs-at-law from ever availing themselves of their right to possess or sell, or subject themselves or the purchasers from them to the danger

Seabrook *et al. vs.* Brady.

of a recovery, on the ground of some unjust or illegal claim or debt of which they would have no notice until the trial. If notice be given as to who are the creditors, provided there be any, and the heirs or those holding under them have just cause of defense against illegal or fraudulent claims, they would then have the opportunity to be heard and of protecting their rights.    The administrator cannot complain of this, nor can any *bona fide* creditor when such a proceeding is necessary. When the right is given to an administrator to file a bill to marshal assets, which is for his own protection and safety, this very duty is required of him and he must make the creditors parties.    When he proceeds against the heirs-at-law or claimants under them, which may be also for his protection and benefit, he should not be allowed an unconscionable advantage. No objection was made on this trial to the evidence that Mrs. Wilcher was a creditor of Burton T. Dennard and the defendant had no right to raise the questions that were set up against her claim as a creditor unless she had been a party. His permitting the proof without objection was equivalent to a waiver of the necessity of her claim being set forth in the bill, and he was bound by it as much as if it had been so set forth.    Had he made such objection the complainant could have amended his bill.    No such objection being made, and Mrs. Wilcher not being a party so as to be able to object to the attack on her claim or debt or to defend the same, the defendant could not have demanded a decree founded on the fraud or invalidity of her claim as a creditor.

I therefore concur in affirming the judgment granting a new trial.