## SAVANNAH, THUNDERBOLT AND ISLE OF HOPE RAILWAY *v.* GROGAN.

The verdict was sustained by the evidence, and was not excessive. Construed in connection with the whole charge, the instructions complained of were not erroneous.

Argued February 26,— Decided March 18, 1903.

Action for damages. Before Judge Norwood. City court of Savannah. September 2, 1902.

Mrs. Grogan sued a street-railroad company on account of personal injuries, and obtained a verdict for $750. A motion for a new trial was overruled, and the company excepted. It was alleged, that on July 31, 1901, the plaintiff with five of her children (one an infant in her arms) boarded a car of the company, paid the fares to the conductor, and told him to put her off at Stewart and West Broad streets. She reminded him several times not to let her pass said point. When the car reached Stewart street it did not stop, but passed said street a little distance on West Broad, and then stopped. She immediately arose with her children and proceeded to alight. Two of the children got off first; and while she with her babe was doing so in the exercise of all reasonable diligence, with one foot on the running-board, and in the act of stepping to the ground with the other foot, the car started forward with a sudden jerk, and she was thrown violently to the ground, but managed to cling to the handhold of the car and was dragged on the ground about a car-length, when she was compelled to release her hold, and fell upon her head. She struck violently her shoul-

der, right side, and head, and was badly bruised. She was also injured internally, had a hemorrhage of blood from the mouth, and for some time thereafter continued to spit blood. She had no opportunity to prevent her fall. She was confined to her room for some time, suffered great pain and mental anguish, was unable to work, and incurred expense for medical treatment. The company's servants were negligent in not allowing her sufficient time to safely alight after the car stopped, and in starting it forward with a violent jerk without warning. She "sues for her personal injuries, for her pain and suffering both mental and physical, for her loss of time, and her physician's bill," and for punitive damages.

The plaintiff's testimony supported her allegations. She further testified that she had been nervous and sick and had pain in her side since being confined to her room, and still had the pain; and that before she was hurt she helped her husband in pressing clothing, and could look after household duties, but had never been able to attend to that work since. Her physician and another witness gave testimony tending to corroborate her as to the extent of her injuries and suffering. She introduced the conductor of the car. He had understood her to say that she wanted to get off at New street. She and her children were toward the rear of the car. At the front were a lady and child who were to get off at Berrien street. He went forward, assisted those two to alight at that point, rang the motorman ahead without looking back (not thinking any one else wanted to get off, there being few passengers), and when the plaintiff screamed he rang the car down, looked back, and saw her on her knees in the soft sand. Berrien is a little north of Stewart street, and is a convenient place to get off for Stewart. Those two streets and another come together there. The car was going northward. There was testimony for the defendant, that, after the lady at the front of the car was helped off, the plaintiff was seen standing on the ground with her babe; that the conductor said, "All right," and stepped on the car; that the children began to scream; and when the car started the plaintiff caught hold of it, and was pulled by it down upon her back; and that it was stopped in not more than a car-length. She did not fall from the car; she caught hold of it, and it pulled her down. The conductor said to her that he was sorry; that he thought she wanted to get off at New street. She told him she was not hurt; and she and

her children walked away after all of them had alighted and she had been assisted to rise.

The grounds of the motion for new trial sufficiently appear from the opinion, except the following:    The charge of the court submitted to the jury's consideration, on the subject of damages, "that mental suffering which arises from the consciousness of one's incapacity to labor and earn a living," they being instructed that, the declaration not alleging any permanent injury, any finding on this ground would have to be limited to the date of the verdict; but if they found that the plaintiff had suffered from this cause up to the trial, they "could give a verdict for that as an item of damages." This was assigned as error, because there was no allegation that the plaintiff was incapacitated to labor or earn a living, or that her earning capacity was diminished; and nothing to authorize a recovery for pain and suffering beyond that suffered before the filing of the suit, or for diminished capacity to labor thereafter; and no evidence to authorize a recovery for diminished capacity to labor after her confinement to her room; and nothing to authorize a recovery for diminished earning capacity.    Also, because the charge was not confined to the pain and suffering from diminished capacity to work.

*Osborne & Lawrence*, for plaintiff in error.
*Twiggs & Oliver*, contra.

LAMAR, J.    A new trial is not required because the court charged as follows:    "I repeat what I said about contributory negligence.    If there should be contributory negligence upon the part of the plaintiff, she could yet recover, provided her negligence did not amount to a want of ordinary care; but her damages would have to be diminished in proportion to her contribution."    This was not a case where the question of avoiding the injury by ordinary care was involved (Civil Code, § 3830), and the rule was stated too strongly against the plaintiff, who might have been entitled to recover even though her contributory negligence did amount to a want of ordinary care.

The charge of the court must be construed in the light of the subject-matter about which the judge is speaking (*Brown* v. *Matthews*, 79 *Ga.* 7); and where, in instructing the jury, he charged that the plaintiff can not allege one set of facts and recover by

proof of another, as " the plaintiff . . is presumed to know how he was injured better than anybody else, . . and is presumed to set out the facts exactly as they occurred, and upon them the law requires him to stand or fall," this was stating a rule of pleading and of presumption against the plaintiff; it was not the expression of an opinion that, as a fact, " the plaintiff knew more about the case than any one else," nor did it give to her " a higher degree of credit as a witness than she was entitled to have," nor charge that there was a presumption that her statements in the petition were true.

Where in a suit for personal injuries damages are claimed for incapacity to labor, and for suffering, up to the time of the filing of the suit, but without objection evidence is admitted as to the pain, suffering, and incapacity to labor, up to the time of the trial, and the judge charges on such theory, a new trial will not be granted. If objection had been made at the time, the evidence should have been excluded, or the plaintiff could have amended. *Ratteree* v. *Chapman*, 79 *Ga.* 574 (2).

*Judgment affirmed. By five Justices.*